Thank you, Your Honor. May it please the Court. I'm Petter Batalden, appearing on behalf of the appellant Amusement Art. I'd like to begin this morning with the legal effect of the district court's fraud ruling. We can talk about the merits and whether there was fraud in a bit, but I'd like to start with the legal effect or the consequences of the finding of fraud, because that alone requires reversal. The district court granted the defendants a broad, complete summary judgment, but the fraud ruling doesn't justify complete relief. That's because fraud in the PTO is a narrow defense. The remedies are limited. If fraud is proven, there are two consequences. First, registrations are canceled, and second, any claims for infringement of a registered mark are defeated. But that's it. All other claims survive untouched. What claim are we talking about here? I'm sorry, Your Honor? What claim are we talking about here that you think survives? Because if it's an argument that there should be an infringement claim based on an unregistered mark, I don't really see any argument that there's power in an unregistered mark. Nor do I see any basis for a claim. I mean, the alleged fraud is the misstatement that these trademarks were in use, notably the fake photographs. They weren't in use. There's no unregistered claim either, is there?  because that claim is not in use. We're off of the unregistered claim? I mean, I just don't see anything to that one. So if you think there's something to it, I need to hear it. Otherwise, it's argued, but it seems to be purely theoretical. So, Your Honor, if you look at the complaint, paragraph 6. I don't ask whether you've pled it. Are there any facts to support it? If, in fact, this trademark was not in use, how do you have an unregistered claim? There's a couple questions there, and let me try to take them in turn. First, we used the Life is Beautiful mark in connection with art shows and art installations and art exhibitions. None of the other products that are submitted in those fake photographs, I take it? Your Honor, they're not fake, but I'll come back to that. Well, OK, they're real photographs of something that wasn't true, so you can call them what you want. But, Your Honor, those art exhibitions and art installations were under the name of the title of the show was Life is Beautiful. Which is about as generic a name as can be. I mean, when I think of Life is Beautiful, I think of the film from 20 years ago. I think of, indeed, when I thought about this the other day, you may not be old enough, but there was a hit of sorts in 1966 by an artist purporting to be Napoleon XIV. They're coming to take me away, ha ha. And in there, that phrase Life is Beautiful reappears several times. So as Your Honor knows, context is king in looking at marks. And Life is Beautiful is neither generic nor descriptive of an art show. Might be descriptive of life, but it's not descriptive of an art show. Forgive me for interrupting, but is that the answer to Judge Clifton's first question, which is, what claim are we talking about? If you set aside, if we agree with you that maybe the ruling was too broad once there was a finding of fraud, what unregistered claim are you talking about? So at the time that the complaint was brought, there was not a registration. There was not a ninth registration. But there was a common law mark. Right, for what? That's what Judge Clifton asked, and that's what I'm waiting for. Is it for Life is Beautiful vis-a-vis the? Art shows. Art shows or festivals? Yes. Okay, so why does that survive? That survives because that claim is not based on a registered mark, as pleaded in the complaint. In addition, our unfair competition claims don't rest on the use of any mark, let alone a registered mark. But here's the problem I have with any other, any unregistered Lanham Act claim for Life is Beautiful, and I think the problem I have is that in the district court, it seemed to me that what your team argued, I think relied on exclusively, was the presumption that arose from the 2014 registered mark. Isn't that right? Your Honor, we did brief that extensively, but the district court found, and there's evidence in the record, that we use Life is Beautiful as our mark in connection with art shows and art exhibitions. But how does it, so, I think you relied on the 2014 mark, counsel. Yes. All right, so that's just a non sequitur as far as I can see, and I need help with that, because that mark, that registration, postdates the allegedly infringing conduct. Yes, and even if your Honor accepts that, there was still use of Life is Beautiful as a mark in connection with art shows and art installations. Okay, then you get back, I think, to my other problem, which is, that's not what you pled in the district court. You pled reliance. I think you relied on the 2014 mark, registered mark. We did, Your Honor, but we also put on evidence that we used Life is Beautiful as the title of seven art shows, and the district court credited that evidence in its order. So your answer to my question is, and I'm not trying to give you a hard time, I'm trying to make sure I understand, your answer to my question is that you did not exclusively rely on the 2014 registered mark. That's right. Even if you disregard that mark as evidence of use, there was evidence of use, as the district court credited, on pages 12 to 13, and footnote one of the excerpts of record, in its order. Now, to get back to the unfair competition claim, that claim survived. Could I, before counsel, excuse me for interrupting, but I don't want to get off that mark. Didn't the 30B6 designee concede that the Life is Beautiful phrase was not used as a trademark? No, Your Honor, that was only with respect to the paw part. As to the trademark, we used Life is Beautiful as the title of art shows, and there's authority that when you use a title repetitively in a series of works over time, that that can acquire trademark protection, and that's exactly what we have here. But independent of trademark, we have an unfair competition theory that survives. The unfair competition theory is that the defendant's deceitful, underhanded tactics to build a festival on the backs of our hard work, you know, they took our images of art off the internet, put it into pitch documents, they put on their social media accounts pictures of our art, that is an unfair or deceptive business practice. That survives irrespective of any trademark that might be claimed in this case. And as Professor McCarthy has explained, we do not lose our common law rights, we do not lose our state law rights, and we don't lose our Lanham Act rights, so long as they're not related to registered marks. All of those claims survive, and this court should reverse the summary judgment on that basis alone. Now as to, I'll come back to use just briefly, because I want to make sure I answered all of Judge Clifton's questions. The district court made a determination, this is on pages 12 to 13 of the excerpts of record, and footnote one, that we titled an art show in 2008 Life is Beautiful, and that thereafter there were six additional shows titled Life is Beautiful. Now because those titles are eligible to acquire trademark protection, we pleaded an unregistered claim for infringement of that mark. That's our unregistered trademark claim that survives the district court's fraud ruling. In addition, we have the unfair competition claims. So all of those claims should be reversed, and we should be allowed to pursue those claims on remand in the district court. Now the only other potential basis that they have articulated for, you know, affirmance of the fraud on the PTO ruling is that they were harmed. But they weren't harmed, and the public wasn't harmed, and there's no evidence of that. It's entirely speculative that there was any harm at all, because no competitor came forward with evidence. They didn't elicit any evidence that somebody was deterred from entering the market. We didn't go out and threaten people, or act as a monopolist, as in the 1969 Northern District of Illinois case that they rely on. None of those facts are present here. And in terms of the harm to the defendants, they were going to be sued anyway on the unfair competition theory that I've mentioned and on the unregistered trademark theories I've mentioned. So there was no extra harm to them from being sued, not to mention the fact that it would raise serious First Amendment and Norr-Pennington problems if this court were to hold that merely being sued, being subjected to suit, having to defend against a suit is itself enough of a defense to defeat all of a plaintiff's claims. I mean, this court held in the TrafficSchool.com case that, I'll read you one sentence if I may, using litigation to shut down a competitor who uses unfair trade practices is precisely what the Lanham Act seeks to encourage. So the idea that we could be responsible for filing and maintaining a lawsuit and causing harm is inconsistent with this court's precedence. I have a couple questions about fees that I want to give you a chance to answer before you sit down. My first question is whether your complaint was ever amended to drop the claims, the Lanham Act claims rising from the eight registered marks. I don't believe so, Your Honor. Those were dealt with on summary judgment before there was a further amended complaint. Okay, so my understanding is that there was discovery that was conducted. You received a letter letting you know that the summary judgment motion was coming. Your team responded by surrendering the eight registered marks. That's correct. But the complaint was not amended. That's correct, because they moved for summary judgment within a matter of weeks after that surrender or withdrawal. And at that point, the summary judgment briefing took over. The district court made its decision. There wasn't a need at that point to amend the complaint. But certainly we're not pursuing those claims. We've surrendered and withdrawn those eight registrations. All right, thank you. I have a question, counsel. In the absence of the district court's order of cancellation of the trademarks, is there, in your opinion, any limitation on the amusement arts ability to re-register those same trademarks later? So, Your Honor, the district judge's ruling cancels the eight registrations, not the ninth. And there may be some confusion in the briefing on that, but the order doesn't touch the ninth. But the district court's order does cancel the eight registrations. In our view, that's moot, because we've surrendered and withdrawn those registrations. We don't intend to use them. It's sort of academic at this point. But as a matter of law, the court's ruling cancels those registrations. Counsel, the question goes to capable of repetition, right? We know the acceptance of mootness doctrine goes to capable of repetition. So what we need to know is, could you go back and re-register those marks? We do not intend to re-register those marks, Your Honor. Well, that's one way of answering it. And is there any dispute in this record that the products identified in the trademark registrations were never sold? Any dispute to that? Your Honor, I would answer the question this way. It's not disputed that those registrations, the applications, were inaccurate. We acknowledge that. But those photos, for example, were real photos of real pieces of art. The mistake was the failure to recognize on the part of my client's executives that they were supposed to put on, if they had any, evidence that they sold the products as products as opposed to objects of art. You know, take the spray can, for example. That spray can was a piece of art. Mr. Brainwash created it. It was for sale, like all of his artwork. But it wasn't for sale as spray cans, right? It wasn't going to be sold for anybody to go and put graffiti on the wall. It was an art object. So that's an example of how our evidence is consistent with the absence of a subject of intent to deceive. Unless there are further questions, I'll reserve the rest of my time. Thank you. Good morning. May it please the Court, Tamerlan Godley, Munger, Tolson, Olson, on behalf of Life is Beautiful, LLC and Downtown Las Vegas Management, LLC, I'll refer to both collectively as LIB, or Life is Beautiful. Music Art claims to have used the Life is Beautiful mark on over 250 goods, they claimed. To support its claim of use, they mocked up and submitted photographs to the PTO purporting to show use of the mark with the sale of goods. It is undisputed that those photos did not show sale. They had to make up tags and put them on pieces of merchandise that they never sold. In Music Art's witnesses admitted during deposition that AA never sold these goods with the LIB mark. In Music Art's fraud on the PTO was brazen and widespread. It improperly monopolized the phrase for eight categories and 250 goods over a period of years. But in Music Art did not stop there. It used those registrations as the first claim and the centerpiece of its suit against Life is Beautiful. They surrendered the claims relating to the registered marks before you filed your summary judgment motion. They did. So why weren't those claims moved? So at that point, in terms of the cancellation, the law is clear on that, Your Honor. That unless, as the judge over here asked, that unless it is impossible for them to renew or reapply for those registrations, then the cancellation, the summary judgment on the cancellation motion was proper. I don't think so, counsel. They would have to reapply. Those would be new applications and new, presumably photographs and other new supporting material. Right, but then they could get them reissued to the date of their claimed use. Those would be new applications. We're talking about the existing applications. Right, but those, it wouldn't change their rights. It would change the ruling. It would change the, it wouldn't be res judicata. It would be a new application. So they could, if they, so they just voluntarily surrendered them, then they could go in the next day and file again and try and get those registrations again. New applications and new supporting materials, counsel. So do you have any authority supporting this notion that this would be truly capable of repetition within the meaning of the mootness doctrine? Well, it is well established that like one can, it's very common in trademark. You submit an application and you decide, oh, you want to do it for, you want to change some of the facts that you've put in a new one, but what you end up at the end of the day is a registration for, is the same registration. I'm just going to give you one more chance because I don't think you've answered my question at all. I'm talking about what would happen if they went back in, if anybody went in and anybody could, it would be a new application, right? It would indeed be a new application, but for the same mark, which they now cannot do because those marks have been canceled. And as canceled marks, they cannot attempt to get registration for those same marks again. The reason we have to be so careful about the mootness doctrine is it deprives the district court of jurisdiction. So I'm struggling to see why the jurisdiction has, excuse me, why the district court had jurisdiction over claims that I think were moot. Over the canceled marks? Uh-huh, the surrendered marks. So the surrendered marks, only on the cancellation part, Your Honor, because the rest of the case was still, there was no question about the rest of the case. The mootness part only goes to our counterclaim for cancellation. I'm just waiting for an answer to the question. I really appreciate the limited nature of the question, but it is significant to me, so. So on that cancellation, it's well-established that if they can't go forward, which we've talked about, if they could on their own go back in and reapply for the same marks, then it's not moot. And the Patent and Trademark Office, the TTAB, follows this same line of process. So if someone has, there's a cancellation proceeding, and the person goes in, that the cancellation proceeding is against, and withdraws them, the TTAB will continue to determine whether it was canceled so that that is resolved once and for all. And that is what we're saying here, that on that cancellation, it wasn't moot because they could go back and apply for the same trademarks, for the same set of goods and services, which they cannot now that they have been canceled. And even as counsel said, they said, we don't intend to, but that doesn't answer the question of whether they could. I certainly agree that not intending to doesn't end it, but I think those would clearly be new applications, and I'm taking up too much of your time, so go right ahead. Okay, so I do want to get to, so I started to say that they did not stop there. They used those registrations as the first claim, and the centerpiece of its suit against Life is Beautiful to try and bar Life is Beautiful from using the feel-good phrase. It litigated based on those fraudulent legislations for over two years. It knew when it was litigating that it had not used the mark with those goods and services, and yet it prosecuted those claims for two years, only when its witnesses admitted under penalty of perjury that it had not sold the goods with the mark or at all, and that the photos were fakes. Only then did Amusement Arts surrender the trademarks. Let me ask it this way. If we decide that the claim, the Lanham Act claims arising from the registered marks were moot when the summary judgment motion was filed because they had already been surrendered, is there anything else on the Life is Beautiful, forget the heart for a minute, on Life is Beautiful Lanham Act, is there anything else about those claims that would make them exceptional? That would make them exceptional for purposes of fees? Yes, so it is the entire course of conduct. It is not, so this is a really important point that I want. The court determined, and the cases that counsel relies on are cancellation cases, but this is not just a cancellation case. We did have counterclaims for cancellation. The court found that their entire course of conduct, the fraudulent registration, the prosecution of those claims for two years of litigation were such inequitable conduct that they were barred from all of their claims against Life is Beautiful. And so that- Right, even the claims that weren't, the common law claims. Even the common law claims. So what I'm asking you is, what about those claims was special or exceptional, or what's your strongest authority for that? So the fraud and in perpetuating that fraud is exceptional. So, I mean, you can't just say, oh, well, we can't. The court concluded, and regularly where there is unclean hands, the cases say that that is an exceptional case. We don't think that people should come into the court and try to press fraudulent claims, and persist with those. I grant you that counsel, but you just keep missing my question. I grant you that absolutely, and I certainly agree with you that the evidence here was extraordinary. I'm trying to figure out, though, it seems to me that that goes to fraud on the PTO, goes back to Judge Clifton's first question, goes to fraud on the PTO, registered marks. But if there had never been any registration, there would have been these other common law claims and the California unfair competition claim and whatnot. And I'm trying to figure out what's your best argument. If the claims arising from the registered marks were moot at the time the summary judgment motion was filed, what's your best argument that you are owed fees on the other Lanham Act claims? What makes those exceptional? Is it just sort of this wash over notion that the fraud? We have to take the case that was filed. So the case that wasn't filed, they didn't come in and say, we're bringing a 43A false designation of origin claim. We don't have any registered marks. We're just gonna claim that we may have used it in our art and we may have used it in these other ways. That's not the case that was filed. Now there's your summary judgment motion. That's the problem for me. That it's your summary judgment. I think your summary judgment motion was moot when it was filed as to the registered marks. And there's room to disagree. But if we decide that, then I'm trying to figure out, then what's your next best argument? So I think we have to be really careful. The only thing it can be moot is as to the cancellation. I've said that four times, I think. Okay, so then there's their claims that we had infringed their marks. They went forward that we continue to say- And you heard him this morning, he thinks he's got a common law mark. And so I'm waiting for your answer to that. So at the end of the day, the ninth registration, which they relied on, Your Honor, you noted in particular that what they relied on for use before the district court is very clear. They relied entirely on the ninth registration. And I can read to you, but it's on ER 1136-37. I've taken up a lot of your time, but I think you're right. And so I asked opposing counsel about that. He's relying on the 2014 registered mark, which postdates the allegedly infringing content. I'm with you, right? Right. And so then I asked him again, and he said that's not exclusively what we relied upon. Is your read that when I go back to the record, I'll confirm that that was the sole argument? It says, thus by demonstrating, this is they have one paragraph where there's the ownership prong, and whether there is any likelihood of confusion prong. On the ownership prong, the use prong, they said, thus by demonstrating that it holds a federal registration, amusement art has made a prima facie showing that it holds a valid, protectable interest in the use of the life is beautiful mark. The first prong of the analysis is therefore satisfied, period. Okay, so is that what you're relying on getting? Now go to fees, if you would. Yeah. And because I'm trying to figure out why those claims are exceptional. Are you going to tell me that, is this going to relate to fees or just to affirming the judgment on those? Well, it relates to affirming the judgment on this, that what they relied on was just a 2014, but the overall case that they did bring and which the court found summary judgment on was exceptional because of the course of conduct that started with the fraud and the PTO and went through the whole course of the litigation. So, and I wanted just to address a little bit about the use too. The ornamental use is not a trademark use. The Billie Holiday mural that they talk about, that is art, they say that it's art. It's art with a feel-good phrase. It's not an advertisement. It's not saying life is beautiful art, here it is. It's not a billboard, it's art. And the ornamental use of phrases, and he uses lots of feel-good phrases in art, that does not make for a trademark. The title of an art show, a single art show, is not trademark use. Upside down. Well, I'm sure it's a single art show because there are references in subsequent shows that include the phrase life is beautiful. There are. First of all, it's not what they lay out in their appellate papers. You have to go back to them because those were not called life is beautiful at the time of the show. Now, everything they've done is called. But we know that they didn't use life is beautiful as mark because when they applied in 2011, 2012, they didn't apply for class 41. And instead, they applied in eight other categories and they put in fake use. So. Well, that doesn't mean they didn't use it. What do you mean? They didn't apply. Well, we know that if they were applying across the board for everything, they didn't even use the mark with. If they thought that they were using life is beautiful as a mark with festivals, they would have applied then and they did not. So that lacks speaks for itself. I think it's. Was there a registration for art shows? Is there a registration for art shows? Can, yeah. There 41 is for shows and festivals. Great. And was there ever an application under category 41? Not until they filed this lawsuit. Well, there's a 2014 registration. That's when they filed this lawsuit. And about the 2014 registration, the district court ordered that that should be canceled as well. Did you ask them for that relief? No, and in fact, the court didn't do that. As they noted, there's confusion in the record. What the court said is under unclean hands. They are barred in this courtroom from any claims against LIB. The 41, that registration is subject to cancellation proceedings in the PTO. It wasn't issued until after the close of discovery in this case. And it will be taken up at that time. So how did the unclean hands bar any claim against LIB? Because the way that unclean hands works and there is not at all of the cases they rely on are only cancellation cases. Where there are unclean hands, the court can go forward and balance the equities and say that your inequitable conduct has harmed LIB, has harmed the public, and I'm balancing the equities based on undisputed evidence. You are barred from continuing their claims against Life is Beautiful in this courtroom. That's how unclean hands works. And it goes beyond the notion that unclean hands just means, oh, you lose your registrations. Then there would be no impediment to people lying to the patent and trademark office. In fact, in the cases where there's cancellation of marks, it's usually some statement that's made that doesn't go to the heart of trademark, which is use. This fraud went to the heart of use. It was fake representations of use. When it's another type of statement, and in those cases where the courts say, well, they can continue on with their common law claims, as you noted, that's because there is evidence in the record that there was use. And they're relying on that. And so the courts say, well, it's not equitable to bar them for all their claims. But here, the very essence of what they lied about was use. And the court said that bars your entire set of trademark and unfair competition claims against LIB in this courtroom. And that they balance the equities based on the undisputed facts. And I think it's important to note that the court is not required to comb through the record and pick out their use. When they had the opportunity to tell the court what their use was, they said, we are relying on the presumption of the 2014 registration that was issued in 2016. And that gives them only a presumption of use beginning in September of 2014, which is after LIB started using it. So even if not barred by unclean hands, and we raise this in the court below, and we raise it here, it is not the basis of a valid claim. Council, could I shift you to the fees again? Since you're talking about the totality here. Do the time entries that your client entered specify what time was spent in discovery on the various and different claims? They do. They complained that they were block billing, but block billing cases deal with when you just say services rendered. These go through in detail, and the time that was spent, everything that we did to six minute increments showing exactly what we did. So they do go through in detail what we did on the case. Even if it were duplicative as on the various claims, did you separate it out as to copyright or trademark? There are indications, like it'll say, you know, research copyright issues or, you know, but when it was like responding to discovery, so about three, I forget the exact numbers, but like 80 of the requests for production were trademark related and 10 were copyright or whatever the numbers are. We have that in our briefing. We would just say, you know, responding to discovery. So in that case, it is not separated out. Thank you. So let's see here. I think that they haven't mentioned it here, Your Honor, but one of the things that they did a lot with in their briefing was try to say that the declarations of the Guettas were enough to stop summary judgment, and that is just not the case. FDCB publishing clearinghouse, a conclusory self-serving affidavit lacking detailed facts and any supporting evidence is insufficient to create a genuine issue of material fact. And here they said they were not native English speakers. They filed the trademark applications without the assistance of an attorney, and they believed all the statements were true. That's just conclusively saying, I didn't lie. They didn't explain why they mocked up, how the pictures got mocked up. They didn't say that they didn't understand the words. They didn't say that they thought a statement of use application didn't require use. They didn't say any of that. So those conclusive allegations cannot throw off a finding of summary judgment here. If that was the case, then we would never have summary judgment. Someone would just say, nope, I didn't do it, and that is not enough under the law. A, Amusement Art has already put Life is Beautiful through four and a half years of litigation expense based on trademark registrations that it obtained through fraud, indisputably and without question. If this court reverses and sends us back to the district for a trial based on the conclusory declarations of the Guettas or any other type of theory, LIB will be subject to at least another year of litigation and further expense. And such a rule is untenable. Based on the undisputed facts, Judge Pregerson applied established law. None of this is an abuse of discretion. Judge Pregerson's summary judgment ruling should be upheld. With that, unless you have any other questions. Anything further, Judge Roof? No, thank you. Thank you for your argument, counsel. Thank you. Thank you. I'd like to start with the unclean hands point that counsel made. The McCarthy treatise that this court has cited approvingly in OTR, which we sent the court a 28-J letter on before that in Far Out Productions, that treatise says that whether it's a fraud on the PTO defense or it's an unclean hands defense or it's unclean hands based on fraud in the PTO, your common law claims survive. All that is canceled are registrations and any claim that depends on a registered mark is defeated. But I think, again, going back to Judge Clifton's maybe a first question, maybe a second question, theoretically, but you still have to show that there was use as a source identifier. You still have to show the claim. And this is pretty thin. What's your best shot that the common law claims survive? Is it unfair competition? I think the unfair competition claim is the cleanest to focus on, Your Honor. But there's an important procedural point to keep in mind as well. The failure to use Life is Beautiful as a mark is a point that they raise as an alternate ground for affirmance. District Court didn't address it. And procedurally- I think the district court recognized it. No, Your Honor. On pages 12 to 13 of the excerpts of record, the district court said that we used Life is Beautiful as the title, as the name, as our mark, in other words, for seven art shows. That's protectable. That has nothing to do with the registrations, the other eight registrations. Correct. The district court has nothing to do with the other eight registrations, but it is a claim for unregistered trademark infringement that's in the complaint. And if you cannot affirm on alternate grounds that are only partial, right, it has to be a complete alternate ground for affirmance. And whether we did or didn't use it as a mark doesn't touch our unfair competition claims. That's the point. In the Ecological Rights Foundation case, this court recognized you can't partly affirm on alternate grounds. You can only wholly affirm on alternate grounds. Why can't we affirm on the ground of unclean hands? Your Honor, unclean hands, as Professor McCarthy explained. Well, you might have to be more specific than that, because I don't understand how equitable relief can't be denied based on misconduct by the party that seeks relief. Your Honor, the second element of unclean hands is the requirement that there be a match, a congruence between the alleged fraud on the one hand and the plaintiff's claims on the other hand. And here they don't match because the unfair competition claim that we have does not depend on using any mark, let alone a registered mark. So even if you accept the district court's finding that we committed fraud in the PTO, it wouldn't touch the basis for the unfair competition theory. That's the claim that we're talking about. What keeps the court from not recognizing that a party that conducts fraudulent activity should not be allowed to step sideways and say, well, that was there, but this is here, and I still have this claim here. Why can't the court say, look, your misconduct bars you from relief, period? Because there has to be congruence. Why? Tell me why there has to be congruence. If I decide that your clients are fraudster, why do I have to listen to any of his requests? Your Honor, if you don't separate out and require that match, then the defense of fraud on the PTO and unclean hands, which the Lanham Act recognizes are separate and distinct, have collapsed into each other. There's no difference between them any longer. B-1, 1115b-1 is the fraud on the PTO defense. 1115b-9 is equitable principles, like unclean hands. This Court has never before recognized that you can take fraud on the PTO and make it the basis for unclean hands. But even if we're going to assume that you can do it. Have we ever said that you can't? No. But, Professor — Well, then you need to persuade me why we can't. Because Professor McCarthy explains that was not the intent of the drafters of the Lanham Act. He says that in section 31, colon, 60. The idea is we have claims against them for their infringing acts. They shouldn't get off scot-free simply because of fraud in the registration process, if indeed fraud is proven at all. There are separate and distinct actions that they have undertaken that are not touched by fraud on the PTO. Their only case that they can cite as an example of where fraud on the PTO has led to a defense of unclean hands that has swept away all of the plaintiff's claims is this Northern District of Illinois case. And that's a case where the plaintiff publisher acted as a monopolist. It went out and it threatened parties. It coerced other parties into stopping their use of a mark. We have none of that here. We never used the mark as a monopolist. We gathered these eight registrations inaccurately. We made mistakes. And as soon as we learned about it, we withdrew them. We surrendered those marks. Now we're here talking about unfair competition, which is based on a theory that is utterly distinct from our trademark claims. We don't have to have any mark at all, let alone a registered mark, in order to prevail on those claims. And that's the reason why the district court's fraud finding, even if you accept it as accurate, cannot justify a complete summary judgment. You need to reverse for those claims that are not touched by the fraud on the PTO. The second point I'd like to make is that as to the use of the mark, apart from the inability of this Court to partially affirm on alternate grounds, we did use the mark. And that's the title of the art shows. I've made that point. Finally, I think it's agreed between the parties that there was no cancellation of the ninth registration. That ninth registration was not listed in the complaint. It wasn't the basis of any motion. Nothing in the district court's ruling says that all nine are canceled. And if you look at the fees ruling, this is page 3 of the excerpts of record in the So we know that the ninth registration has not been canceled. And the final point I want to make, then, is with respect to fees, they're not entitled to fees on common law claims, as, Judge Kristin, you were asking about. So the basis for fees stands or falls on the merits. If you reverse as we've asked, then the fees ruling necessarily falls. Alternatively, the Court did not abuse its ample discretion in looking at the fees issues. Just one more question about the other fees, the unregistered Lanham Act claims. I asked you earlier whether or not you defended in the district court on anything other than the rebuttable presumption that arose from the 2014 registration, and you thought that you had. And opposing counsel thinks you didn't. Do you have an ER site for me? Your Honor, I don't have an ER site for you. But what the record shows is that we briefed, in opposition to summary judgment, we rested on the 2014 registration. Counsel, that post stated they allegedly infringed in conduct. I don't understand that at all. But the district court, Your Honor, made a determination in its order that we did use the mark. And we're free to rest on that and take the life is beautiful mark as used with art shows and art installations. Are you talking about a common law mark now, or are you talking about the 2014 registered, what mark? We're talking about, it's the same mark, life is beautiful. Well, I know, but I'm trying to be careful, because I think you are, and in case  I'm wrong, is that all of the other Lanham Act claims, I should say, including the unfair competition claim, passing off, all of those claims were defensible because of the 2014 registration of life is beautiful. I think you alleged in the district court, and to me, that's a non sequitur. Your Honor, I don't disagree with what you've said, but that is not a reason to affirm, because there is evidence of use. And the district court marshaled it on pages 12 to 13 of the excerpts of record. All right. The district court said, we used the mark in connection with art shows and art installations, and the district court was exactly right about that. Thank you. Thank you all for your argument. We'll stand in recess.
judges: Clifton, Christen, Rufe